IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CIGNA HEALTHCARE OF GEORGIA INC.,

Petitioner,

v.

DL INVESTMENT HOLDINGS, LLC f/k/a/ DURALL CAPITAL HOLDINGS, LLC d/b/a/ CHESTATEE REGIONAL HOSPITAL, AARON DURALL and NEISHA ZAFFUTO,

Respondents.

Case No. 0:23-cv-62393

**PETITION TO CONFIRM ARBITRATION AWARD AND ACTION AGAINST AARON DURALL AND NEISHA ZAFFUTO, INDIVIDUALLY**

Petitioner Cigna Healthcare of Georgia, Inc. (or "Cigna"), pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9.U.S.C. § 9, hereby petitions this Court to confirm the December 1, 2023 "Final Ruling and Award" (the "Award"), a true and correct copy of the Award is attached hereto as Exhibit A. After eight hearing days, the Arbitrator ruled in favor of Cigna and against Respondent DL Investment Holdings, LLC ("Respondent" or "DL Investment"), holding that Cigna was entitled to recover over $20,000,000 as set forth in the Award. In support of this petition, Cigna respectfully shows as follows:

**PARTIES AND JURISDICTION**

1. Cigna is a corporation incorporated and existing under the laws of the state of Georgia, and maintains its principal place of business in Atlanta, Georgia.

2. DL Investment is a Florida limited liability company with a principal address in Sunrise, Florida. It was formed on August 3, 2016, as Durall Capital Holdings, LLC, and on

December 7, 2016, changed its name to DL Investment Holdings, LLC. DL Investment is a single-member LLC, and its sole member – Aaron Durall – is a citizen of Florida. As such, DL Investment is a citizen of Florida for the purposes of diversity jurisdiction. Pursuant to the Award, DL Investment is liable to Cigna for $61,900.00 in arbitration fees and costs, $1,711,994 in attorney's fees and other costs, and $18,893,125 in restitution and prejudgment interest.

3. Aaron Durall is an individual who resides in Parkland, Broward County, Florida. He is, and was at all material times, the sole member, owner, and manager of DL Investment.

4. Neisha Zaffuto is an individual who on information and belief resides in Tamarac, Broward County, Florida.

5. This Court has personal jurisdiction over DL Investment, Aaron Durall, and Neisha Zaffuto because they are citizens of the state of Florida.

6. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because (1) it involves a suit between "citizens of different States" and (2) "the matter in controversy exceeds the sum or value of $75,000."

## VENUE

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to Section 9 of the FAA and 28 U.S.C. § 1391 (b)(1), because at least one Defendant resides in the Southern District of Florida and all defendants are Florida residents.

## FACTUAL ALLEGATIONS

8. In 2014, Mr. Durall and Ms. Zaffuto opened a drug testing laboratory, named Reliance Laboratory ("Reliance"). Ms. Zaffuto owned and operated Medivance Billing Service, Inc. ("Medivance"), a medical billing company. Reliance performed urine drug testing services, primarily for patients in drug and alcohol treatment centers all around the country, and billed

private health insurers for reimbursement as an out-of-network provider. Medivance performed billing services for Reliance.

9. In 2016, Mr. Durall and Ms. Zaffuto devised a fraudulent scheme through which they identified and purchased hospitals in rural areas and exploited the favorable in-network rural hospital reimbursement rates with private health insurers, such as Cigna.

10. In furtherance of the scheme, Mr. Durall and Ms. Zaffuto purchased Chestatee Regional Hospital ("Chestatee") in August 2016 for $15 million. Mr. Durall paid $7.5 million, through DL Investment, which subsequently began doing business as Chestatee. Ms. Zaffuto purchased the other half, paying $7.5 million. Mr. Durall and Ms. Zaffuto never executed a written contract indicating their shares in the hospital; instead, they purchased a hospital 50/50 on a handshake. On paper, Chestatee was 100% owned by DL Investment, which itself was and is 100% owned by Mr. Durall; in reality, Chestatee was 50% owned by Ms. Zaffuto.

11. Chestatee was a rural hospital that was in-network with Cigna and had favorable in-network reimbursement rates with Cigna and other private health insurers. The then-operative in-network contract contained an arbitration clause, requiring disputes to be arbitrated under the rules of the American Health Law Association Alternative Dispute Resolution Service.

12. After acquiring Chestatee, Mr. Durall and Ms. Zaffuto caused Chestatee to submit large numbers of claims for urine drug testing services that were actually performed at Reliance, but intentionally misrepresented that they were performed at Chestatee (when in fact, they had been performed at Reliance) in order to take advantage of the rural hospital's favorable in-network reimbursement rates.

13. In executing their fraud scheme, Mr. Durall and Ms. Zaffuto caused Chestatee to violate numerous other provisions in Chestatee's in-network contract with Cigna all in an effort to extract enormous amounts in reimbursement from Cigna that were not owed.

14. Among other things, the drug testing services for which Mr. Durall and Ms. Zaffuto caused Chestatee to bill Cigna for services that were not medically necessary for the treatment of any patient and were performed, if at all, and for patients across the country that had never set foot in Chestatee. Furthermore, shortly after purchasing Chestatee, Mr. Durall and Ms. Zaffuto increased Chestatee's billed charge for urine drug screens from $200 per test to $3,500 without prior notice to Cigna, also in violation of Chestatee's in-network agreement.

15. Ms. Zaffuto and Medivance also billed Cigna $1,492 for urine drug confirmatory tests run at Reliance and represented that those tests had been performed at Chestatee. In fact, Chestatee never performed any urine drug confirmatory tests because Chestatee never had the necessary equipment to run those tests.

16. Medivance retained a portion of each reimbursement it collected from Cigna on behalf of Reliance and Chestatee. Ms. Zaffuto co-mingled the amounts acquired by Medivance, Reliance, and Chestatee into one big pool. Chestatee and Medivance never executed a formal agreement for Medivance to serve as Chestatee's billing company. Another entity, Holy Gates Holding Company, which was controlled by a member of Ms. Zaffuto's immediate family, also received payments from DL Investment during the time Ms. Zaffuto owned 50% of Chestatee.

17. Shortly after Mr. Durall and Ms. Zaffuto purchased Chestatee, and as a result of their scheme, Mr. Durall and Ms. Zaffuto began making substantial amounts of money from private health insurers, such as Cigna, that unwittingly reimbursed for these urine drug tests.

18. Mr. Durall and Ms. Zaffuto directed money from reimbursements for these same urine drug tests to accounts based in Florida belonging to DL Investment, and not to the hospital's normal accounts.

19. On information and belief, Mr. Durall used the money flowing into DL Investment's accounts for his own personal use and to pay Ms. Zaffuto. The proceeds of their scheme include, but are not limited to:

- $184,407,671.87 for Mr. Durall;
- $10,902,011.30 for Ms. Zaffuto;
- Real property located at 7822 Marvana Lane, Parkland, Broward County, Florida, 33076, currently worth approximately $3.3 million, for Mr. Durall;
- Real property located at 9447 Satinleaf Place, parkland, Broward County, Florida, 33076, currently worth approximately $1.2 million, for Mr. Durall;
- Real property located at 9705 NW 67 Court, Tamarac, Broward County, Florida, 33321, currently worth approximately $350,000, for Ms. Zaffuto;
- Real property located at 9805 NW 67 Court, Tamarac, Broward County, Florida 33321, currently worth approximately $420,000, for Ms. Zaffuto;
- A 2017 Range Rover for Mr. Durall;
- A 2015 Ferrari 458 Speciale Spider for Mr. Durall;
- A 2015 Mercedes Benz S550 for Mr. Durall;
- A 2014 Rolls Royce Wraith for Ms. Zaffuto;
- An Audemars Piguet Royal Oak Lady Offshore women's watch for Mr. Durall;

- A Tiffany & Company diamond 3.280 carat solitaire ring for Mr. Durall; and,
- A Patek Philippe 5940G-010 men's watch for Mr. Durall.

20. On information and belief, Mr. Durall also used the proceeds of his and Ms. Zaffuto's billing scheme to purchase a private jet, which he still owns. Mr. Durall also used the proceeds of his and Ms. Zaffuto's billing scheme to purchase courtside tickets to Miami Heat basketball games.

21. DL Investment has never maintained a corporate existence separate and apart from Mr. Durall and Ms. Zaffuto. At all times, Mr. Durall has served as the sole owner, member, and manager.

22. On information and belief, DL Investment has never had any other employees, owners, members, managers, officers, or directors, and has never engaged in any business operation other than acting as a pass-through vehicle for Mr. Durall's and Ms. Zaffuto's ownership of Chestatee.

23. As such, DL Investment was simply a piggy bank to fund Mr. Durall's and Ms. Zaffuto's lifestyle through monies received from insurance reimbursement.

24. Before discovering Mr. Durall's and Ms. Zaffuto's fraud scheme, Cigna reimbursed Chestatee almost $13 million solely for urine drug screens and urine drug confirmatory tests, based on the false representation that those services had been performed at Chestatee (when, in fact, they had been performed at Reliance).

25. In April 2018, DL Investment sold Chestatee. Prior to the sale, DL Investment made more than $130 million from reimbursement from urine drug testing alone. Due to Mr. Durall's

and Ms. Zaffuto's extraction of assets from the rural hospital, Chestatee was forced to close shortly after the sale. On information and belief, DL Investment currently has no assets.

26. On February 28, 2022, DL Investment served an arbitration demand on Cigna, asserting claims for breach of contract, violation of the Georgia Prompt Pay Act, unjust enrichment, and breach of the covenant of good faith and fair dealing, demanding reimbursement for allegedly unpaid claims for urine drug testing.

27. Cigna timely answered on April 25, 2022, asserting counterclaims for breach of contract, violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), fraud, negligent misrepresentation, unjust enrichment, and conversion.

28. An arbitration hearing was conducted on August 23-26, August 28-30, in person in Atlanta, Georgia, and on September 15 and September 19, 2023, via Zoom. The hearing was held in front of Arbitrator Christine Whitney under the rules of the American Health Law Association. Mr. Durall, Ms. Zaffuto, and an expert witness testified for DL Investment. Two Cigna employees, a former Chestatee employee, and an expert witness testified for Cigna.

29. On September 29, 2023, the parties submitted draft findings of fact and conclusions of law. The Arbitrator issued the Award on December 1, 2023. The Award denied all of DL Investment's claims, and granted all of Cigna's counterclaims. The Award also awarded Cigna with all pre- and post-judgment interest, attorneys' fees and costs, and costs of the arbitration.

30. The Award awarded Cigna a total of $20,667,019: $61,900 in Arbitrator compensation and expenses, $1,711,994 in attorney's fees and costs, and $18,893,125 in restitution and prejudgment interest.

**COUNT I – CONFIRMATION OF ARBITRATION AWARD**

31. Cigna hereby reincorporates paragraphs 1 through 30 as if fully stated herein.

32. The Award is final and binding under the FAA and should be confirmed a made a judgment of this Court pursuant to 9 U.S.C. § 9. It disposes of all DL Investment's claims and all Cigna's counterclaims, and is ripe for confirmation.

33. None of the circumstances set forth in 9 U.S.C. § 10 warranting vacatur of an arbitration award exist here. There is no evidence that "the award was procured by corruption, fraud, or undue means." There is also no evidence of partiality or corruption in the Arbitrator. Neither party was prejudiced during the course of the arbitration by any postponement or refusal of the Arbitrator to hear evidence. Finally, the Arbitrator did not exceed her powers in denying DL Investment's claims and granting Cigna's counterclaims.

34. Accordingly, the Court must grant an order confirming the Award.

## COUNT II – ALTER EGO

35. Cigna hereby reincorporates paragraphs 1 through 34 as if fully stated herein.

36. During the time that DL Investment, Mr. Durall, and Ms. Zaffuto owned Chestatee, DL Investment did business as Chestatee. As Mr. Durall testified repeatedly at the arbitration hearing, that DL Investment and Chestatee were one and the same.

37. DL Investment is owned and dominated by Mr. Durall, who is the sole member, owner, and manager.

38. There is no separate existence between DL Investment and Mr. Durall, and DL Investment is a mere instrumentality of Mr. Durall.

39. Chestatee, as a d/b/a/ of DL Investment, was owned and dominated by Mr. Durall and Ms. Zaffuto, and was a mere instrumentality of Mr. Durall and Ms. Zaffuto.

40. Mr. Durall and Ms. Zaffuto purchased Chestatee and each acquired a 50% interest, though on paper Chestatee was purchased by DL Investment. Mr. Durall and Ms. Zaffuto used DL Investment as a means to further their rural hospital billing urine drug testing scheme.

41. DL Investment withdrew more than $130 million from Chestatee from reimbursement for urine drug testing alone. DL Investment paid Ms. Zaffuto and entities related to her tens of millions of dollars received from insurance companies for reimbursements for urine drug testing.

42. Mr. Durall and Ms. Zaffuto used DL Investment and Chestatee for their personal benefit, withdrawing millions of dollars from the rural hospital and leaving the community with a hospital that was forced to close its doors.

43. Mr. Durall and Ms. Zaffuto disregarded the corporate formalities of DL Investment and Chestatee by actively dominating the companies and using them for improper purposes.

44. Cigna was damaged by Mr. Durall's and Ms. Zaffuto's use of DL Investment and Chestatee to defraud Cigna. Through Chestatee, Cigna paid Mr. Durall and Ms. Zaffuto almost $13 million in fraudulent-billed urine drug screens and urine drug confirmatory tests before discovering their fraud.

## PRAYER FOR RELIEF

WHEREFORE, Cigna respectfully requests that:

A. An order of this Court be made confirming the Award set forth in Exhibit A hereto as a final and enforceable judgment;

B. Judgment entered in favor of Cigna against all defendants, including DL Investment, Mr. Durall, and Ms. Zaffuto;

C. All defendants, including DL Investment, Mr. Durall, and Ms. Zaffuto, be held liable for the full amount of the Award jointly and severally;

D. Cigna be awarded attorney's fees, costs, and post-judgment interest; and,

E. Any other relief this Court deems just and proper.

Dated: December 21, 2023.

Respectfully submitted,

**ALSTON & BIRD LLP**

*<u>/s/ Jared M. Slade</u>*
JARED M. SLADE
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3424
Facsimile: 214-922-3884
Email: jared.slade@alston.com

EDWARD T. KANG
*Pro Hac Vice Forthcoming*
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
E-mail: edward.kang@alston.com

KELSEY L. KINGSBERY
*Pro Hac Vice Forthcoming*
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-862-2200
Facsimile: 919-862-2260
E-mail: kelsey.kingsbery@alston.com

*Attorneys for Petitioner Cigna Healthcare of Georgia, Inc.*