# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

Case No. 0:23-cv-62393-RS

CIGNA HEALTHCARE OF GEORGIA, INC.,

    Petitioner,

v.

DL INVESTMENT HOLDINGS, LLC f/k/a/ DURALL CAPITAL HOLDINGS, LLC d/b/a/ CHESTATEE REGIONAL HOSPITAL, AARON DURALL and NEISHA ZAFFUTO,

    Respondents.
_____/

## RESPONDENT'S, DL INVESTMENT HOLDINGS, LLC f/k/a/ DURALL CAPITAL HOLDINGS, LLC d/b/a/ CHESTATEE REGIONAL HOSPITAL, ANSWER AND AFFIRMATIVE DEFENDES TO PETITION TO CONFIRM ARBITRATION AWARD AND COUNTER-PETITION TO VACATE ARBITRATION AWARD

Respondent, DL INVESTMENT HOLDINGS, LLC f/k/a/ DURALL CAPITAL HOLDINGS, LLC d/b/a/ CHESTATEE REGIONAL HOSPITAL ("**Respondent**" or "**DL Investment**"), files this Answer and Affirmative Defenses to Petitioner's, CIGNA HEALTHCARE OF GEORGIA, INC. ("**Petitioner**" or "**Cigna**"), Petition to Confirm Arbitration Award[1] [DE 1] and Counter-Petition pursuant to 9 U.S.C. §§ 10, 11, and 12 to vacate the Arbitration Award dated December 1, 2023.

## PARTIES AND JURISDICTION

1. Admitted.

---

[1] DL Investment's answers are on its own behalf only. As such, to the extend any particular allegation is asserted against other Respondents or multiple parties, these answers shall be limited to DL Investment only.

1

2. Admitted that DL Investment is a Florida limited liability company with a principal address in Sunrise, Florida. Further admitted that it was formed on August 3, 2016 as Durall Capital Holdings, LLC, and on December 7, 2016, changed its name to DL Investment Holdings, LLC. DL Investment is a single- member LLC, and its sole member – Aaron Durall – is a citizen of Florida. Admitted that DL Investment is a citizen of Florida for the purposes of diversity jurisdiction. Admitted that there was an award entered against DL Investment and in favor of Cigna for $61,900.00 in arbitration fees and costs, $1,711,994 in attorney's fees and other costs, and $18,893,125 in restitution and prejudgment interest, but denied that the award is proper.

3. Admitted for jurisdictional purposes only.

4. Admitted for jurisdictional purposes only.

5. Admitted for jurisdictional purposes only.

6. Admitted for jurisdictional purposes only.

## VENUE

7. Admitted for jurisdictional purposes only.

## FACTUAL ALLEGATIONS

8. Admitted.

9. Denied.

10. Denied.

11. Admitted

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

## **COUNT I – CONFIRMATION OF ARBITRATION AWARD**

31. Respondent hereby reincorporates its responses to paragraphs 1 through 30 as if fully stated herein.

32. Denied.

33. Denied.

34. Denied.

## **COUNT II – ALTER EGO**

This claim is not asserted against DL Investment, and therefore, no response is required. To the extent a response is required, all allegations are denied.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**. The Arbitrator exceeded her powers by entering an Award that was not supported by applicable law. 9 U.S.C. § 10.

**Second Affirmative Defense**. The Arbitrator's Award displays manifest disregard for the law, to wit, applicable statutes of limitations to the claims at issue.

**Reservation of Rights.** DL Investment reserves the right to amend this Answer to add additional affirmative defenses.

## COUNTER-PETITION TO VACATE ARBITRATION AWARD

Respondent files this Counter-Petition pursuant to 9 U.S.C. §§ 10, 11, and 12 to vacate the Arbitration Award dated December 1, 2023 (the "**Award**"), and alleges as follows:

## PARTIES AND JURISDICTION

1. Respondent/Counter-Petitioner, DL INVESTMENT HOLDINGS, LLC f/k/a DURALL CAPITAL HOLDINGS, LLC d/b/a CHESTATEE REGIONAL HOSPITAL, is a limited liability company incorporated and existing under the laws of the State of Florida, which maintains its principal place of business in Sunrise, Florida.

2. Petitioner/Counter-Respondent, CIGNA HEALTHCARE OF GEORGIA, INC., is a for-profit corporation incorporated and existing under the laws of the State of Georgia, which maintains its principal place of business in Atlanta, Georgia.

3. Jurisdiction and venue are proper in this forum under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4. Under 9 U.S.C. §12, this Petition was served on Cigna's attorneys within three months after the Arbitrator panel issued the Award.

5. All conditions precedent to maintaining this action have been performed, satisfied, excused or waived.

## FACTUAL BACKGROUND

**Cigna's relationship with Chestatee prior to DL Investment's ownership.**

6. Cigna is a managed care company that insures and administers group health plans ("**Benefit Plans**") that provide benefits to subscribers and beneficiaries ("**Participants**").

7. Chestatee Regional Hospital ("**Chestatee**") is a forty-nine (49) bed regional hospital located in Dahlonega, Georgia.

8. Until August 2016, Chestatee was owned by Southern Health Corporation of Dahlonega ("**SHCD**").

9. Cigna's relationship with SHCD was governed by a Health System Agreement dated March 1, 2008 (the "**2008 HSA**"), whereby Chestatee agreed to be an in-network provider with Cigna.

10. Pursuant to the 2008 HSA, Cigna agreed to reimburse Chestatee for Covered Services provided to Participants enrolled in certain Benefit Plans, on a "percentage of charge," meaning Chestatee was to be reimbursed based on an agreed percentage of the eligible charge for the service rather than on a fixed-fee schedule.

11. Section 4.13 of the 2008 HSA specifically excludes from eligibility for reimbursement any "services rendered at facilities other than those facilities agreed upon and utilized as of the Effective Date unless otherwise agreed to by Cigna."

**Cigna and Chestatee negotiated an initial contract.**

12. On or about August 19, 2016, DL Investment purchased Chestatee from SHCD.

13. Accordingly, on or about September 30, 2017, DL Investment and Cigna entered into a Letter of Agreement (the "**Letter of Agreement**"), whereby Cigna and DL Investment agreed that until the parties were able to execute a final agreement on all terms, the 2008 HSA would govern Cigna's and DL Investment's rights and obligations.

14. Pursuant to the Letter of Agreement, the same was to remain in effect unless terminated pursuant to the provisions set forth in the 2008 HSA.

**Chestatee's growth under DL Investment's ownership.**

15. Like most rural healthcare providers, Chestatee had struggled with difficult market conditions. As such, upon purchasing Chestatee, DL Investment embarked on an aggressive growth strategy to offset the high costs of running the hospital.

16. As part of DL Investment's growth strategy for Chestatee, it decided to expand Chestatee's ability to provide laboratory services, which would help subsidize much of Chestatee's growth.

17. Hospitals, especially rural ones, often utilize third-party laboratories, known as "reference laboratories," to perform laboratory tests that the hospitals themselves are unequipped to or otherwise unable to perform. These hospitals usually pay the reference laboratories and then bill the patient or the patient's insurance company for the laboratory test.

18. Prior to DL Investment's ownership of Chestatee, the same only had three laboratory technicians and a laboratory manager on staff. Moreover, Chestatee was utilizing reference laboratories to run laboratory tests for its relatively small volume of patients, and insurers, including, Cigna were paying for those services.

19. After purchasing Chestatee, DL Investment hired an additional five laboratory technicians to be able to handle an increased volume of laboratory tests and act as a reference laboratory.

Moreover, DL Investment purchased additional equipment and freezers to facilitate the testing and storage of the specimen samples.

20. Through referrals from physicians and drug and alcohol treatment facilities, the volume of laboratory tests processed by Chestatee grew dramatically under DL Investment's ownership.

21. In fact, Chestatee operated its laboratory 24 hours a day, 7 days a week.

22. Toxicology tests are laboratory tests that look for traces of drugs in an individual's blood, urine, hair, sweat, or saliva.

23. Urine drug tests are the most common toxicology tests because it is widely available, minimally invasive, and generally the least expensive for drug detection and monitoring.

24. Urine drug testing falls into two categories of testing – presumptive and definitive.

25. Presumptive testing is used, when determined by a treating physician to be medically necessary, to detect the presence or absence of one or more drugs or drug classes in the individual's blood. Presumptive testing is typically performed via immunoassay, and results are expressed as negative, positive, or numeric.

26. During DL Investment's ownership of Chestatee, referring providers would order presumptive toxicology tests to be conducted by Chestatee.

27. Chestatee utilized two Siemens analyzers and later a Beckman Coulter 680 chemistry analyzer in order to fulfill all presumptive tests ordered by referring providers.

28. Accordingly, during DL Investment's ownership of Chestatee, all presumptive tests for Cigna's Participants, which are at issue in this case, were completed on-site at Chestatee and billed appropriately billed to Cigna.

29. Despite the foregoing, at some undisclosed date, *but prior to* March 31, 2017, Cigna was alerted to the substantial increase in the volume of claims for reimbursement being submitted

for laboratory services by Chestatee and initiated an investigation into the claims data from Chestatee.

30. By March 31, 2017, Chestatee's case had been referred to a Fraud Specialist within Cigna's Special Investigations Unit ("**SIU**").

31. As of April 13, 2017, Cigna had placed a "flag" on Chestatee's account and denied all claims for reimbursement of laboratory testing as "services not rendered as billed."

32. On May 11, 2017, Cigna's Special Investigations Unit ("**SIU**") initiated an investigation into suspected fraudulent billing by Chestatee.

33. On October 2, 2017, based on the results of its investigation, Cigna's SIU concluded that Chestatee was engaged in a pass-through billing scheme and that Cigna had paid Chestatee for claims for reimbursement that were not covered under Cigna's coverage policy or the terms of its agreements with Chestatee. As such, Cigna's SIU modified the protocol of the "flag" on Chestatee's account to deny incoming claims as "services not rendered as billed" and referred the matter to the Georgia State Insurance Commissioner through National Association of Insurance Commissioners for review and handling.

34. On April 2, 2018, Cigna sent a letter to Chestatee advising that Cigna's investigation confirmed that Chestatee had repeatedly sent claims for reimbursement to Cigna for services that were not performed at Chestatee but rather at Reliance Laboratory Testing, Inc. ("**Reliance**"). Cigna explained that such services are not covered and that, as a result, Cigna had overpaid Chestatee more than $13 million and requested that Chestatee return to Cigna all amounts that Cigna had allegedly overpaid Chestatee.

35. Based on the "flag" placed on Chestatee's account by Cigna, from April 13, 2017 through July 2018, all claims submitted by DL Investment to Cigna were outright denied as "not rendered as billed."

**The Arbitration and the Award.**

36. DL Investment initiated the subject arbitration by filing a Complaint for arbitration against Cigna on February 3, 2022. Thereafter, on April 25, 2022, Cigna filed a Counterclaim again DL Investment.

37. The Federal Arbitration Act (FAA) applied to the arbitration pursuant to Section 6.4 of the 2008 HSA. When courts exercise jurisdiction under FAA, they apply the choice-of-law rules of the forum (Restatement (Third) U.S. Law of Int'l Comm. Arb. § 2.3 PFD (2019)).

38. The 2008 HSA provides that federal and Georgia law govern the arbitration clause therein.

39. An arbitration hearing was conducted on August 23-26, August 28-30, in person in Atlanta, Georgia, and on September 15 and September 19, 2023, via Zoom. The hearing was held in front of Arbitrator Christine Whitney under the rules of the American Health Law Association.

40. On September 29, 2023, the parties submitted draft findings of fact and conclusions of law. The Arbitrator issued the Award on December 1, 2023. The Award denied all of DL Investment's claims and granted all of Cigna's counterclaims. The Award also awarded Cigna with all pre- and post-judgment interest, attorneys' fees and costs, and costs of the arbitration.

41. The Award awarded Cigna a total of $20,667,019: $61,900 in Arbitrator compensation and expenses, $1,711,994 in attorney's fees and costs, and $18,893,125 in restitution and prejudgment interest.

42. However, the Arbitrator ignored the applicable law.

43. Counts III and IV of the Counterclaim filed by Cigna in the arbitration were cause of actions for fraud and negligent misrepresentation, respectively. Counts III and IV were premised on the allegation that DL Investment made false and misleading representations, directly and indirectly, to Cigna that services were performed by and at Chestatee when they were performed by and at Reliance.

44. A four-year statute of limitation applies to actions for fraud and negligent misrepresentation. *See* OCGA § 9–3–31; *Willis v. City of Atlanta*, 265 Ga.App. 640, 643, 595 S.E.2d 339 (2004); *Shapiro v. Southern Can Co.*, 185 Ga.App. 677, 677–678, 365 S.E.2d 518 (1988). "The statute of limitation begins to run on any given claim on the date the claim accrues—in other words, on the date that suit on the claim can first be brought." *Hoffman v. Ins. Co. of North America*, 241 Ga. 328, 329, 245 S.E.2d 287 (1978); *See Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251(1), 569 S.E.2d 495 (2002) ("The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained his or her action to a successful result.") (Citation and punctuation omitted.)

45. As of April 13, 2017, Cigna had placed "flag" on Chestatee's account and denied all claims for reimbursement from them." Therefore, the statute of limitation for Cigna to bring claims for fraud and negligent misrepresentation against DL Investment was four years after April 13, 2017.

46. At the latest, by October 2, 2017, Cigna's alleged causes of action for fraud and negligent misrepresentation had accrued, since by that date, based on the results of its investigation, Cigna's SIU concluded that Chestatee was engaged in a pass-through billing scheme. Based upon that purported investigation and allegations of fraudulent billing, Cigna brought the Counterclaim against DL Investment on April 25, 2022. However, because Counts III and IV

of the Counterclaim were based upon alleged conduct that occurred prior more than four years prior to April 25, 2022, those causes of action were time-barred.

47. Count V of Cigna's Counterclaim in the arbitration was a claim for unjust enrichment, which asserted that: (i) DL Investment submitted, and caused to be submitted, claims for reimbursement to Cigna for services provided to Participants that contained false and misleading representations, including intentionally misrepresenting that services were performed by and at Chestatee when they were actually performed by and at Reliance; (ii) Cigna detrimentally relied upon DL Investment's false and misleading claims for reimbursement; (iii) DL Investment's false and misleading representations induced Cigna to pay, and allowed DL Investment to affirmatively accept the benefit of at least $13 million that DL Investment was not entitled to receive under the Benefit Plans; (iv) DL Investment has not returned any portion of the money that Cigna paid on claims submitted for these Participants; and (v) DL Investment would be unjustly enriched if it is allowed to retain these payments.

48. Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for. *Harris Ins. Agency v. Tarene Farms*, 293 Ga.App. 430, 431(1), 667 S.E.2d 200 (2008). A claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails. *Tidikis v. Network for Med., etc.*, 274 Ga.App. 807, 811(2), 619 S.E.2d 481 (2005). An action for unjust enrichment only lies where there is no express contract. *Ades v. Werther*, 256 Ga. App. 8, 567 S.E.2d 340 (2002).

49. Generally, the statute of limitations for a claim of unjust enrichment is four years. *Engram v. Engram*, 265 Ga. 804, 463 S.E.2d 12 (1995); *Renee Unlimited, Inc. v. City of Atlanta*, 301 Ga.

App. 254, 687 S.E.2d 233 (2009). "The statute of limitation begins to run on any given claim on the date the claim accrues—in other words, on the date that suit on the claim can first be brought." Hoffman v. Ins. Co. of North America, 241 Ga. 328, 329, 245 S.E.2d 287 (1978); *See Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251(1), 569 S.E.2d 495 (2002) ("The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained his or her action to a successful result.") (Citation and punctuation omitted.)

50. At the latest, by October 2, 2017, Cigna's alleged cause of action for unjust enrichment had accrued, since by that date, based on the results of its investigation, Cigna's SIU concluded that Chestatee was engaged in a pass-through billing scheme and that Cigna had paid Chestatee for claims for reimbursement that were not covered under Cigna's coverage policy or the terms of its agreement with Chestatee.

51. However, Cigna did not file its Counterclaim until April 25, 2022, more than four years later. Therefore, Count V of the Counterclaim for unjust enrichment was time barred.

52. Even if the claim for unjust enrichment was not time-barred, Cigna was not entitled to a judgment based on its unjust enrichment claim. First and foremost, DL Investment and Cigna were parties to the Letter of Agreement and the 2008 HSA, which are express contracts. Therefore, no action for unjust enrichment was available.

53. Count VI of the Counterclaim asserted a cause of action for conversion based on the following: (i) DL Investment submitted, and caused to be submitted, claims for reimbursement to Cigna for services provided to Cigna Plan members that contained false and misleading representations, that included but are not limited to misrepresenting that services were performed by and at Chestatee when they were actually performed by and at Reliance; (ii) DL

Investment intended to and did obtain funds from Cigna on these false and misleading representations; (iii) DL Investment's conduct in making false and misleading representations on their claims for reimbursement to Cigna in order to obtain funds from Cigna was unauthorized; (iv) DL Investment exercised and continue to exercise ownership over those funds which rightfully belong to Cigna, to the exclusion of Cigna, depriving Cigna of its property.

54. OCGA § 9–3–32 provides as follows: "Actions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues." Generally, a right of action for wrongful conversion accrues on the date of the conversion. *Harper v. Jones*, 103 Ga.App. 40, 41, 118 S.E.2d 279; *Therrell v. Georgia Marble etc., Corp.*, 960 F.2d 1555, 1560(2) (11th Cir.).

55. At the latest, by October 2, 2017, Cigna's alleged cause of action for conversion had accrued, since by that date, based on the results of its investigation, Cigna's SIU, concluded that Chestatee was engaged in a pass-through billing scheme and that it was in possession of funds paid to it by Cigna. However, Cigna did not file its Counterclaim until April 25, 2022, more than four years later. Therefore, Count VI of the Counterclaim for conversion was time barred.

## COUNT I – VACATE ARBITRATION AWARD

DL Investment hereby reincorporates paragraphs 1 through 56 above as if fully stated herein.

56. The FAA, 9 U.S.C. § 1 et. Seq. is applicable to this Petition to Vacate Arbitration Award. A district court may vacate an arbitration award on either statutory or non-statutory grounds.

57. Under the FAA, an award may be vacated if: (1) the award was procured by corruption, fraud or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the

arbitrators were guilty of misconduct or engaged in any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10.

58. An arbitral award may also be vacated on two non-statutory grounds: (1) if it displays manifest disregard for the law; or (2) if it is contrary to public policy.

59. In this case, statutory or non-statutory grounds exist to justify vacating the Award, or at least modifying the same.

60. Throughout the arbitration, DL Investment plainly and extensively advised the Arbitrator that the statute of limitations for many of Cigna's claims has elapsed.

61. In manifest disregard of the law, the Arbitrator granted the Award on the claims set forth in more detail above.

62. Therefore, the Award should be vacated.

## PRAYER FOR RELIEF

**WHEREFORE**, DL Investment respectfully requests that this Court to enter an Order vacating the Award entered on December 1, 2023, together with an award of attorney's fees, costs, and for such further relief as this Court deems just and proper.

Dated: February 20, 2024.

Respectfully Submitted,

**DI PIETRO PARTNERS PLLC**
901 Las Olas Blvd., Suite 202
Fort Lauderdale, FL 33301
*Primary Service Email:*
service@ddpalaw.com
*Secondary Service Email:*
paralegal2@ddpalaw.com
Telephone: (954) 712-3070
Facsimile: (954) 337-3824

*/s/ David Di Pietro*
**DAVID DI PIETRO, ESQ.**
Florida Bar No.: 10370
*david@ddpalaw.com*
**LISANDRA ESTEVEZ, ESQ.**
Florida Bar No.: 111475
*lisandra@ddpalaw.com*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I electronically filed the foregoing via electronic mail to the following:

**SERVICE LIST**

Jared M. Slade
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300 Dallas, TX 75201
Phone: 214-922-3424
Fax: 214-922-3884
Email: jared.slade@alston.com
*Attorney for Petitioner*